May I have a moment, please, your honor? Thank you. We won't count it as a crime. Thank you, your honor. May it please the court, I am Karen Sirianni Gerlach and I represent the appellant Robert Pawlowski. At this time I would ask the court's permission to reserve three minutes of rebuttal time. Thank you, your honor. A defendant does not sexually abuse a minor when he masturbates in front of her on a webcam. The sentence enhancement that Mr. Pawlowski received for masturbating in front of a webcam requires sexual abuse. The district court therefore erred in enhancing Mr. Pawlowski's sentence for the conduct at issue. Yes, it did. There's a mandatory minimum sentence, your honor. Mr. Pawlowski was sentenced under Section 2G 1.3 of the guidelines. Paragraph B4A of that guideline provides for a two-level enhancement where a defendant commits quote-unquote sexual contact. The guideline itself does not define sexual contact, but it does cross-reference 18 U.S.C. Section 2246.3 to define that term. We cannot look at Section 2246.3 in isolation. We must look at it in terms of its underlying purpose and the overall framework. We must look at it in the context of the act of which it is a part. The act of which it is a part is Chapter 109 of the Crimes Code, which is the Sexual Abuse Act of 1986. When a defendant masturbates in front of a minor, he is not sexually abusing the minor. He might be corrupting the morals of a minor, but he is not sexually abusing the minor. The statute and the act of which it is a part requires actual sexual abuse. Would you require contact? Is that what you're saying? Yes, because 2246.3 says intentional touching of, and then it lists several private parts of any person. If the Sentencing Commission had not wanted to require sexual abuse as a prerequisite for sexual contact and then the enhancement, it should not have cross-referenced it. Sexual abuse is the whole purpose of the statute, and sexual abuse is not satisfied here. Why would there be sexual harassment? Because that has to occur within the context of sexual abuse. It has to be an intentional touching with the intent to harass. Any person with the intent to harass? Yes. Doesn't the evidence in this case suggest that he was doing it with the intention to cause harassment? No. He was asking her to do things? No, he may have been doing it as a way to condition or desensitize her, but it needed to be more than that. It needed to be actual sexual abuse. But from his questions, wasn't he attempting to arouse her and asking her if she was being aroused? Even if he was, that's only part of the coercion. It doesn't rise to the level of allowing for the enhancement, because the enhancement requires more. It requires a touching. It says the intentional touching with the intent to arouse. And furthermore, the intentional touching could not have been of himself. It had to have been of her. So it has to be of the victim? It has to be of the victim, or I believe there's been a lot of discussion in this case comparing and contrasting Paragraph 2D, defining sexual act, with Paragraph 3, defining sexual contact. Paragraph 3 is an expansion from Paragraph 2D. In Paragraph 2D, Congress talked about intentional touching of another person under the age of 16. In Paragraph 3, it's expanded to say the intentional touching of any person. I believe that where Congress was heading with this was to cover a situation where perhaps a minor touches an adult and is made to touch an adult. And the legislative history of the Sexual Abuse Act, which is set forth in detail in the Schaeffer case, which both parties have cited, has said the whole purpose of the Sexual Abuse Act is to cover as broad a variety of sexual abuse conduct as possible. Does that argument help you? Yes, it does. Yes, it does, Your Honor, because the situation presented here was not a minor touching an adult. I think what the difference boils down to, I think that sexual abuse, which is required because 2246.3 talks about intentional touching, Congress was looking at participation. Viewing an adult in a compromising situation is not by any means a desirable situation, but does not arise to the level of sexual abuse. And the Sentencing Commission did choose to cross-reference a sexual abuse statute within the Sexual Abuse Act of 1986 in order to define that term. Wasn't that done by the Sentencing Commission after the Protect Act of 2003? I'm not sure of that, to be honest, Your Honor, but I don't know that that really has any bearing. They could certainly amend it if they wanted to change it. The Protect Act is looking at the Internet, the sexual abuse of the Internet. There are other statutes within the Crimes Code that talk about Internet abuses and pornography and things like that, child pornography, but the Sentencing Commission did not cross-reference that here. And we can't go beyond what they've cross-referenced and what the clear import of that statute is. And the fact that they chose this is very important. But other circuits don't seem to agree with you, right? The Eleventh Circuit in the Aldrich case does not get into the whole legislative history. And I believe, with all due respect to your colleagues in the Eleventh Circuit, that the opinion is much too superficial. Schaeffer, in the Sixth Circuit, is a situation in which an adult persuaded a child to masturbate. In the Schaeffer decision, the Sixth Circuit said, this is a rare occurrence, and I think it probably is. And in my previous analysis of the difference between paragraph 2D and 3, I believe that Congress was looking to include situations where a child touches an adult. However, even if they weren't contemplating a child being made to masturbate by an adult, I believe that would be covered. And the Sixth Circuit has correctly decided their opinion and does not undermine my argument or my position in any way. Because a child is sexually abused when he or she is made to masturbate. They're not participating and they're not abused if they're merely observing an adult. So I don't think the Sixth Circuit undermines us, and I don't think the Eleventh Circuit looked at the placement of 2246.3 overall in the Sexual Abuse Act. It just made a very superficial analysis based on any person versus another person and the change. It didn't consider the fact that the broadening from another person to any person within the statute was also accompanied by an elimination of the age restrictions. So I do not think the Eleventh Circuit is worthy of being followed, and the Sixth Circuit is distinguishable and does actually involve a situation where a child was sexually abused. I'd like to comment on your position in your reply on Hayward v. Hayward. Hayward, I think, is a recognition by this court that the intention of 2246 is to protect children from sexual abuse. And that is why this court used the word, the touching of the victim. And it includes the scenario from the Sixth Circuit in Schaefer where a child is made to masturbate because the victim is being touched, albeit by his or her own hand. So I think Hayward definitely supports our position, even though the issue addressed in Hayward was not necessarily identical to this one. But I think it's an understanding by this court that the purpose of these statutes is to protect children from sexual abuse and even all people from sexual abuse. So there's a focus on the victim, and this court recognized that. Not right now, thank you. May it please the court. My name is Mike Ivory. I'm an assistant U.S. attorney, and I'm from Pittsburgh. Good afternoon, Your Honors. I'm appreciative that we're starting with the third argument because that was the only one that was properly raised before the district court and is before this court because the plain error standard applies to the first two issues raised by Ms. Gerlach. I think that an adult who, over the course of several weeks, grooms whom he believes is a child and then masturbates in front of that individual via a webcam or even in person is engaged in abusive conduct. But that is not what the issue is. The issue is whether or not that constitutes sexual contact under Section 2G1.3 of the Sentencing Guidelines. Sexual contact is defined as, quote, the intentional touching either directly or through clothing of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. I think that when you look at Mr. Pawlowski's actions in the context in which the action, the self-masturbation occurred, it clearly constitutes sexual contact. He had been grooming, as it turns out, Detective Pavelka of the Allegheny County District Attorney's Office, but he thought it was a 15-year-old girl named Ashley. There were numerous overtures made over the Internet. It was Mr. Pawlowski who brought up the issue of masturbation. Ashley seemed amenable to this. There was banter between the two, and eventually Mr. Hayward was able to expose himself on a web camera. When you read the chat dialogue between the two, Ashley is indicating that she is masturbating as well, that she's aroused, and that Mr. Pawlowski was engaged in intentional conduct with the intent to either arouse and gratify himself or to arouse the 15-year-old Ashley. So what we're dealing with here is sexual contact. I can understand Ms. Gerlach's desire to rely on the Hayward decision as well as the definition of sexual act in Section 2246-2, because that's very restrictive. The Schaeffer Court, as well as the Aldridge Court, and I don't think that the Aldridge Court's analysis is all that facile. I think it took a rather direct approach in determining that any person means every person. I mean, that's common sense. That's the common meaning of the word. However, there has to be contact for a sexual act to occur. There has to be tactile, physical sensation, skin-on-skin contact, which is in Hayward. If you extend Hayward, as Ms. Gerlach wants this Court to, you render the definition of sexual contact completely redundant and nonexistent. It's an illogical argument. Congress specifically used the term another person to contemplate certain situations like this. I mean, the sad fact of the matter is that there are individuals who derive gratification from exposing themselves. There are individuals who derive gratification from arousing other individuals. Mr. Pulaski happens to be one such individual, and as such his conduct falls squarely within the definition of sexual contact. And that is why the two-level adjustment was correctly applied by the District Court. Well, would you say simple exposure would be a violation? It depends. Well, it has to be an intentional touching for simple exposure to occur. And it also has to be performed with the intent to, again, abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person. I guess we can conceive of a situation of a flasher walking into a daycare center and exposing himself. I mean, clearly he's probably trying to derive some kind of gratification from that action, and there is an intentional touching. So yes, that would be a sexual contact under those circumstances. If we were to remove the rope camera in this case and say that Detective Havalka was really a 15-year-old girl that she met with Mr. Pulaski at the Eaton Park down in the waterfront. They drove up to a motel, and there was no direct sexual touching between the two, but Mr. Pulaski did expose himself and did masturbate in front of Ashley, the 15-year-old. Under those circumstances, there's definite sexual contact because it's an intentional touching by Mr. Pulaski of himself or with the intent to either gratify himself or to arouse the 15-year-old that he had lured into the motel. So I think, again, if you carry Mr. Pulaski's argument to its extreme end, it renders the definition of sexual contact redundant, and I don't think that Congress is in the business of drafting legislation that is self-executing a redundancy, especially within the same statutory scheme. I think that Mr. Pulaski's reliance on this Court's observations in the Hayward matter, I think that the single sentence is dicta. That had nothing to do with the resolution of the case, which was whether or not Mr. Hayward engaged in a sexual act involving forcing a cheerleader's head toward a trousered penis. So that dealt with a sexual act. This deals with sexual contact. I don't want to say apples and oranges, but they're two distinct statutory concepts. And I think that the Schaeffer Court was correct in determining that sexual contact is to be given a broad application. Again, there are situations where abuse can occur, sexual abuse can occur, where there is no physical contact between the abuser and the victim. This is a great case in dealing with that. Clearly Mr. Pulaski was abusing Ashley by exposing her to what he exposed her to on the webcam. So are there any additional questions concerning the statutes, Your Honor? Well, briefly I would like to address the sufficiency of the evidence. I think that when you comb through the record, there are approximately 24 to 26 instances where Mr. Pulaski was provided with evidence that he was dealing with someone who was underage. I mean, during the very first conversation, Ashley tells him, I'm 15 years old, that she's in high school. It unfolds from there. He repeatedly refers to her as a young lady. He cautions her, don't tell people that we've chatted. I could get in trouble, you're underage. He's concerned about online sting operations. So he's clearly cognizant, and the evidence is more than sufficient, even without the benefit of the plain error standard, to show that the defendant subjectively knew he was dealing with a 15-year-old. With that, I would like to address the second argument, the issue that was raised, and that dealt with the misstatement that was made by the prosecutor during his opening remarks to the jury. I think what is very important is that the one individual who was probably in the best position to assess what impact Mr. Haller's unfortunate use of the word present evidence before the jury was Mr. DiRiso, the trial counsel. He did not object, and in fact, in his opening statement, Mr. DiRiso even characterized Mr. Haller's statement, the assistant U.S. attorney's statement, as a misstatement. He didn't present evidence to the press at the time. Yes, Your Honor, and I think that the assistant U.S. attorney, in all likelihood, meant to use the word elicit. And if you substitute the word elicit for present, it's clearly, and that's clearly what happened. I mean, if you look at the record, Mr. DiRiso's cross-examination of the government's witnesses went far beyond the extent or the scope of direct examination done by A. USA Haller, evidencing that he did intend to elicit testimony. And, again, Mr. Haller's statement was directed, again, at Mr. DiRiso, not at the defense. Also, when you, again, this is plain error, too, because it was not objected to, but there were no less than 13 specific separate occasions where the jury had been instructed by either the district court, the prosecution, or the defense that the defendant had no burden of proof that he was presumed innocent. So I think, overall, that it wasn't plain error, that it was an unfortunate use of a, it was a misstatement. I think, for once, I'm going to agree with Mike DiRiso on a matter, and that is that Mr. Haller misspoke. If there are no additional questions, I would simply request, and respectfully request that Your Honors affirm the judgment of conviction in the sentence below. Thank you. Thank you. Your Honors, the government made a big deal, both in its brief and in oral argument, about their position that it would have been, would have been a reasonable conclusion that the quote-unquote victim was herself masturbating. And I don't believe the record supports that in any way. And the quotations, which the government has in its brief for this proposition, show that it was pretty much a one-way discussion on Mr. Pulaski's part, and that he would say that perhaps she should engage in that, but she would answer very vaguely and say, yeah, yeah, yeah. So clearly it didn't happen, but even aside from the fact that it was... The question is, did he do it with the intent to cause harassment? No, he has to have intentionally done the touching with the intent to harass, not... But why would he do it? Because... It's called intentional touching with an intent to abuse, humiliate, harass, to rape, or harass or gratify the sexual desire of a tenant. He had no reason to believe that she was sexually aroused, frankly, because her responses... But is there evidence to suggest that he did it with the intent to cause that? Wasn't he saying things to her? Perhaps, perhaps. But he did have to be actually doing the touching with that intent. And because this is within a sexual abuse statute, the touching had to have been of him, I'm sorry, of the victim, and not of the defendant. The other point that the government makes is that the Hayward case is not helpful to our position. I still maintain that it is, but I also believe that without even looking at Hayward, all this court needs to do is to look at the cross-reference that the Sentencing Commission made to a statute within the Sexual Abuse Act and to look at what sexual abuse means. It's defined in Section 2422 of the Sexual Abuse Act of 1986. And it talks about putting the victim in fear, threatening the victim, or committing an act. Because we have to look at those terms within the context of sexual abuse. And it has to be that those things, the harassment, the degradation, and so forth, occurred. He couldn't have been harassing himself or degrading himself. And it's not even clear that he was sexually arousing her or that that fits within the purpose of the statute. It's a sexual abuse statute. But we have to look at the act overall and the purpose of the act overall. When they broadened the language from paragraph 2D to paragraph 3, the point was to encompass more sexual abuse. And as I said, the logical reading would be that they intended to cover situations where a child touches an adult because they didn't just change from another person to any person. They took out the age requirement in this next paragraph. Thank you.